UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

PHYLLIS L. WHITE,

                      Plaintiff

-vs-

JO ANNE B. BARNHART,
Commissioner of Social Security,

                      Defendant.

_____

DECISION AND ORDER

04-CV-6598 CJS

APPEARANCES

For the Plaintiff:          Phyllis L. White, Pro se
                          13 Helena Street
                          Rochester, New York 14605

For the Defendant:        Michael A. Battle, Esq.
                          United States Attorney for the
                          Western District of New York
                          Christopher Taffe, Esq.
                          Assistant United States Attorney
                          100 State Street
                          Rochester, New York 14614

INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final

determination of the Commissioner of Social Security ("Commissioner"), which denied

plaintiff's application for disability insurance benefits.  Now before the Court is

defendant's motion for judgment on the pleadings [#6].  For the reasons stated below,

the application is denied, and the matter is remanded to the Commissioner for further

administrative proceedings.

## PROCEDURAL BACKGROUND

Plaintiff applied for Supplemental Security Income ("SSI") disability benefits on January 6, 2003. (70)[1]  At that time, plaintiff claimed to be unable to work, due to bipolar mental illness, blindness in one eye, carpal tunnel syndrome, pain in her left elbow, and rheumatoid arthritis. (81) The Social Security Administration denied the application on March 17, 2003. (44)  An administrative hearing was held on May 19, 2004, before an Administrative Law Judge ("ALJ").  The ALJ issued a Decision and Order on June 24, 2004, denying plaintiff benefits. (12-20)  Plaintiff appealed, and the Appeals Council denied her request for review on November 4, 2004. (4)  Plaintiff commenced the instant action on December 6, 2004.

## FACTUAL BACKGROUND

At the time of the hearing in this matter, plaintiff was a 44-year-old female, whose education consisted of high school and some college-level courses. (203) Plaintiff was certified as a pre-school teacher, and had worked for four or five years in that capacity. (27-28)  Plaintiff has not worked since 1994.  During the period between her last employment and the date of the hearing in this case, plaintiff was incarcerated in New York State prison for three years based upon a drug possession conviction. (34) Plaintiff has a history of alcohol and drug abuse, though she denies any drug or alcohol use at present. (34-35)  Plaintiff's activities of daily living include preparing meals, washing dishes, doing laundry, shopping, watching television, attending church services, and visiting friends. (29-33, 93)  Plaintiff is able to drive a car, but does not do

---

[1]Unless otherwise indicated, citations are to the Administrative Record.

so at present.  Plaintiff states that she goes to bed at approximately 8:00 p.m., and

claims that, upon waking, she takes medications, eats breakfast, and goes back to bed

and sleeps for approximately two hours more. (28-29) However, it is unclear whether

plaintiff initially rises at 4 a.m. or 8 a.m., since she testified to both at the hearing. (28)

Plaintiff claims to have limited use of her hands due to carpal tunnel syndrome, and

states that it is difficult for her to interact with others due to her mood swings. (110)

MEDICAL EVIDENCE

Plaintiff was examined by Michael Privitera, M.D. ("Privitera") on January 6,

2003, the same day she filed her petition for benefits, and three days after she was

released from prison. (70, 155).  Plaintiff told Privitera that her mental health problems

were "fairly stable" and that she was taking her medications. (155) Plaintiff denied

having any sleep disturbance. (169)  Privitera observed that plaintiff's thought

processes were "organized and clear", and that her affect was "euthymic and

appropriate". (157) Privitera further recorded that plaintiff was

> alert and oriented.  There was no evidence of any memory impairments or
> cognitive deficits.  She appears to be of average intellectual functioning.
> She denied any active suicidal or homicidal thoughts.  Impulse control is
> intact, although there is certainly a history of poor impulse control.
> Judgment and insight are fair.

(157)  Privitera opined that plaintiff did "not present with significant psychiatric

symptoms", though he stated that she would "benefit from continued individual therapy

and medication management." (158) On January 16, 2003, Psychiatric Nurse

Practitioner Barbara Olesko, MS, RN, noted:

> The patient reports a history of depression, anxiety, poor sleep and
> difficulty coping with everyday life.  She currently denies any of these
> symptoms and feels like she is and has been stable on her current

3

regimen of medications.  The client presented as a little disorganized with many papers to be filled out by a variety of people.  She was most focused on having her social security paperwork filled out and making sure she didn't have to go through a substance abuse program.

(160)

Ramon Medalle, M.D. ("Medalle"), a non-treating, examining agency physician, examined plaintiff on February 21, 2003. (169-73) Contrary to what she told Privitera, plaintiff told Medalle that she had difficulty sleeping and had suicidal thoughts. (169) Plaintiff also claimed to suffer from "recurrent nightmares and flashbacks" concerning sexual abuse as a child. (169) Plaintiff told Medalle that she could lift and carry only 5-10 pounds, sit for one hour, stand for one hour, walk two blocks, and climb one flight of stairs. (170) However, Medalle found that plaintiff's physical examination was normal (172), except for bilateral carpal tunnel syndrome and blindness in the left eye.  With regard to plaintiff's hands, Medalle found that hand and finger dexterity were intact, and that grip strength was normal bilaterally, however he found that she was "moderately" limited in performing repetitive movements with her hands. (172-73)

Plaintiff claims that she began treating with Muhammad Raqib Raja, M.D. ("Raja") in February 2003 at the psychiatry department at Strong Memorial Hospital (111).  However, there are no office notes from Raja in the record.  Rather, the only notes for this period are from psychologist Tera Storms, Psy.D. ("Storms"). (213-15) On September 23, 2003, Storms noted that plaintiff's mood was dysthymic, and that her "thought process appeared scattered and tangential." (213) On October 7, 2003, Storms reported that plaintiff's mood was dysthymic and that she reported feeling overwhelmed, insecure, and hopeless. (*Id.*)  On October 27, 2003, Storms noted that

4

plaintiff's mood was slightly improved. (214)  On November 4, 2003, Storms stated that

plaintiff was dysphoric and irritable. (*Id.*)  There are no treatment notes between

December and May 2004.  On May 10, 2004, Raja issued a letter, stating, in relevant

part:

> Mrs. Phyllis White is under treatment at the Psychopharmacology Clinic of
> Strong Memorial Hospital, Department of Psychiatry.  She is being treated
> for major depression, recurrent, polysubstance dependence, in full
> remission, and posttraumatic stress disorder by history.  The patient is
> currently severely impaired in her attention span and concentration and
> her ability to stay at a given task for any length of time.  She is considered
> disabled at the present time.

(218) Raja further indicated that plaintiff was receiving the following medications:

Remeron, Seroquel, Depakote, and Vistaril. (Id.)

## STANDARDS OF LAW

_____42 U.S.C. § 405(g) states, in relevant part, that "[t]he findings of the

Commissioner of Social security as to any fact, if supported by substantial evidence,

shall be conclusive."  The issue to be determined by this Court is whether the

Commissioner's conclusions "are supported by substantial evidence in the record as a

whole or are based on an erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496,

501 (2d Cir. 1998).  Substantial evidence is defined as "more than a mere scintilla.  It

means such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Id.*

For purposes of the Social Security Act, disability is the "inability to engage in

any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to last for a continuous period of not less

than 12 months."  42 U.S.C. § 423(d)(1)(A); *Schaal*, 134 F.3d at 501.

The SSA has promulgated administrative regulations for determining when a claimant meets this definition.  First, the SSA considers whether the claimant is currently engaged in substantial gainful employment.  If not, then the SSA considers whether the claimant has a "severe impairment" that significantly limits the "ability to do basic work activities.  If the claimant does suffer such an impairment, then the SSA determines whether this impairment is one of those listed in Appendix 1 of the regulations.  If the claimant's impairment is one of those listed, the SSA will presume the claimant to be disabled.  If the impairment is not so listed, then the SSA must determine whether the claimant possesses the "residual functional capacity" to perform his or her past relevant work.  Finally, if the claimant is unable to perform his or her past relevant work, then the burden shifts to the SSA to prove that the claimant is capable of performing "any other work."

*Schaal*, 134 F.3d at 501 (Citations omitted).  At step five of this five-step analysis, the defendant may carry its burden by resorting to the Medical Vocational Guidelines or "grids" found at 20 C.F.R. Pt. 404, Subpart P, Appendix 2. *Pratts v. Chater*, 94 F.3d 34, 38-39 (2d Cir. 1996)(citation omitted); *see also*, SSR 83-10 (Noting that in the grids, "the only impairment-caused limitations considered in each rule are exertional limitations.")  However, if a claimant has nonexertional impairments which "significantly limit the range of work permitted by his exertional limitations," then defendant cannot rely upon the grids, and instead "must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain or perform."[2] *Pratts v. Chater*, 94 F.3d at 39; *see also*, 20 C.F.R. § 416.969a(d).[3]

---

[2]"Exertional limitations" are those which affect an applicant's ability to meet the strength demands of jobs, such as sitting, standing, walking, lifting, carrying, pushing, and pulling.  "Non-exertional limitations" are those which affect an applicant's ability to meet job demands other than strength demands, such as anxiety, depression, inability to concentrate, inability to understand, inability to remember, inability to tolerate dust or fumes, as well as manipulative or postural limitations, such as the inability to reach, handle, stoop, climb, crawl, or crouch. 20 C.F.R. 416.969a.

[3]20 C.F.R. § 416.927(d) provides, in relevant part, that, "[w]hen the limitations and restrictions imposed by your impairment(s) and related symptoms, such as pain, affect your ability to meet both the strength [exertional] and demands of jobs other than the strength demands [nonexertional], we consider that you have a combination of exertional and nonexertional limitations or restrictions. . . . [W]e will not directly apply the rules in appendix 2 [the grids] unless there is a rule that directs a conclusion that you are

Under the regulations, a treating physician's opinion is entitled to controlling

weight, provided that it is well-supported in the record:

> If we find that a treating source's opinion on the issue(s) of the nature and
> severity of your impairment(s) is well-supported by medically acceptable
> clinical and laboratory diagnostic techniques and is not inconsistent with
> the other substantial evidence in your case record, we will give it
> controlling weight.

20 C.F.R. § 416.927(d)(2); 20 C.F.R. § 404.1527(d)(2).   However, "[w]hen other

substantial evidence in the record conflicts with the treating physician's opinion . . . that

opinion will not be deemed controlling.   And the less consistent that opinion is with the

record as a whole, the less weight it will be given." *Snell v. Apfel*, 177 F.3d 128, 133 (2d

Cir. 1999)(*citing* 20 C.F.R. § 404.1527(d)(4)).

THE HEARING AND THE ALJ'S DECISION

At the hearing held on May 19, 2004, plaintiff appeared *pro se*, though she was

accompanied by her case worker.  After plaintiff testified, the ALJ posed questions to

Noel A. Plummer, Ph.D., a vocational expert ("VE").  The VE testified that plaintiff's past

relevant work as a pre-school teacher would be considered light skilled work, with no

transferable skills. (37) The ALJ then posed hypothetical questions to the VE.  For the

first hypothetical, the ALJ asked the VE to assume an individual of plaintiff's age and

educational level, who was restricted to the exertional demands of light work, and who

was moderately limited in using her hands repetitively.  The ALJ also asked the VE to

assume that the hypothetical individual was moderately limited in her ability to carry out

detailed instructions, maintain attention and concentrate, complete a normal workday

---

disabled based upon your strength limitations; otherwise the rule provides a framework to guide our
decision."

without interruption due to psychological symptoms, perform at a consistent pace without an unusual number of rest periods, interact with others, accept instructions and criticism from supervisors, get along with co-workers, and respond to changes in the work setting. (38)  The VE testified that, even with these limitations, a person could still perform plaintiff's past relevant work as a pre-school teacher. (39) The VE also testified that such a person could perform other jobs in the economy, specifically, the jobs of a cleaner/maid, information clerk, and inspector. (39-40)  The ALJ then posed a second hypothetical question, in which he asked the VE to consider that, in addition to the limitations previously discussed, the person would need to rest for "a couple of hours a day during a normal workday." (40-41)  The VE stated that such a person would be "unable to perform any job in the national economy on a sustained, competitive basis." (41)

In his decision, the ALJ went through the requisite five-step sequential analysis. The ALJ found that plaintiff had "severe" impairments that did not meet or equal any listed impairment, apparently referring to her blindness in her left eye, bilateral carpal tunnel syndrome, and major depression.[4] (13-14)  As for plaintiff's depression, the ALJ found that it imposed mild restrictions on her activities of daily living and social functioning, and moderate difficulties in maintaining concentration, persistence, and pace. (15) In making this finding, the ALJ gave "little, if any, weight to the opinion of Dr. Raja", finding that it was unsupported. (15) The ALJ found that plaintiff had the residual

---

[4]In the portion of the decision where he discussed his finding that plaintiff had severe impairments, the ALJ did not specifically state what those impairments were, although it appears that they were depression, carpal tunnel syndrome, and blindness in the left eye.  On remand, the ALJ should specifically state which impairments he found to be severe.

functional capacity to lift and carry 20 pounds occasionally, lift 10 pounds frequently, stand and walk 6 hours in an 8-hour workday, perform "simple, low contact job tasks", perform at a consistent pace, and make appropriate work-related decisions, with moderate limitations on her ability to use her hands repetitively. (17) The ALJ gave no weight to plaintiff's claim that she needed to lie down for two hours after rising and taking her medications. (*Id*.)  It is unclear whether the ALJ agreed with the VE that plaintiff could perform her past relevant work as a pre-school teacher, however, he agreed that plaintiff could work as a cleaner, information clerk, and inspector. (18) Based upon these findings, the ALJ found that plaintiff was not disabled. (19)

ANALYSIS

The Court finds that the instant case should be remanded to the ALJ for further development of the record and a new decision.  In that regard, the Court notes first that while Raja, who apparently is plaintiff's treating physician, concluded that plaintiff was "severely" impaired in her attention span and concentration, the record does not explain the basis for his opinion.  For that reason, the ALJ gave "little, if any, weight to the opinion of Dr. Raja." (15) The Court agrees that Raja's opinion is conclusory and appears inconsistent with much of the other medical evidence of record, particularly Privitera's report.  However, the Court finds that on remand, the ALJ should attempt to further develop the record on this point. *Brown v. Barnhart*, No. 02 Civ. 4523(SHS), 2003 WL 1888727 at *7 (S.D.N.Y. Apr. 15, 2003) ("Indeed, before the ALJ can reject an opinion of a *pro se* claimant's treating physician because it is conclusory, basic principles of fairness require that he inform the claimant of his proposed action and give him an opportunity to obtain a more detailed statement.") (citations and internal

9

quotation marks omitted), *aff'd* 85 *Fed. Appx.* 249 (2d Cir. Jan. 13, 2004).  For example, it is unclear whether Raja ever personally examined plaintiff.  There is also confusion in the record regarding plaintiff's need for sleep, and specifically, about whether she actually needs to return to bed for two hours after rising and taking her medications, and whether she would need to take breaks to sleep "during a normal workday."  This point is crucial, since the VE testified that plaintiff would necessarily be disabled if she needed to sleep during a normal workday.  On remand the ALJ should develop the record further, including seeking additional information from medical sources concerning plaintiff's sleep requirements.  The ALJ should also seek information about how, if at all, plaintiff's medications, specifically, Remeron, Seroquel, Depakote, and Vistaril, separately and in combination, might affect her need to sleep or rest during a normal workday.

## CONCLUSION

Defendant's motion for judgment on the pleadings [#6] is denied, and this matter is remanded, pursuant to 42 U.S.C. § 405(g), sentence four, for further administrative proceedings consistent with this Decision and Order.

So Ordered.

Dated: Rochester, New York
       January 12, 2006        ENTER:


                               /s/ Charles J. Siragusa
                               CHARLES J. SIRAGUSA
                               United States District Judge